No. 23-2266

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

LOUIE SANFT,

*Appellant*,

v.

UNITED STATES OF AMERICA,

*Appellee*.

---

On Appeal from the United States District Court
for the Western District of Washington

---

## APPELLANT'S PETITION FOR
## PANEL AND/OR EN BANC REHEARING

---

Angelo J. Calfo
Henry C. Phillips
MORGAN LEWIS & BOCKIUS LLP
1201 Second Ave, Suite 2800
Seattle, Washington 98101
(206) 274-6400
angelo.calfo@morganlewis.com

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Kathleen Foley
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW,
 Suite 500E
Washington, DC 20001-5369
(202) 220-1100
Donald.Verrilli@mto.com

*Counsel for Appellant*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

RULE 35(b)(1) STATEMENT ..................................................................1

STATEMENT OF THE CASE .................................................................3

ARGUMENT ...........................................................................................6

I.   THE PANEL'S DECISION ON *BRADY* CONFLICTS WITH
     DECISIONS OF THIS COURT AND OTHER CIRCUITS AND
     INVOLVES AN EXCEPTIONALLY IMPORTANT ISSUE .......................6

II.  THE PANEL'S DECISION SERIOUSLY MISINTERPRETS AN
     IMPORTANT FEDERAL STATUTE AND A DECISION OF THIS
     COURT ADDRESSING THAT STATUTE ...................................14

CONCLUSION ......................................................................................18

CERTIFICATE OF COMPLIANCE .....................................................20

CERTIFICATE OF SERVICE ..............................................................21

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**FEDERAL CASES**

*Banks v. Dretke*,
    540 U.S. 668 (2004).................................................................8, 14

*Cone v. Bell*,
    556 U.S. 449 (2009)..........................................................................7

*Crace v. Herzog*,
    798 F.3d 840 (9th Cir. 2015) ........................................................15

*Dennis v. Pennsylvania Dep't of Corr.*,
    834 F.3d 263 (3d Cir. 2016) ...........................................................8

*Gonzalez v. Wong*,
    667 F.3d 965 (9th Cir. 2011) ..................................................7, 8, 9

*Kyles v. Whitley*,
    514 U.S. 419 (1995)......................................................................10

*McNabb v. United States*,
    318 U.S. 332 (1943).................................................................13, 14

*Quezada v. Scribner*,
    611 F.3d 1165 (9th Cir. 2010) .......................................................9

*Richards v. San Bernardino*,
    39 F.4th 562 (9th Cir. 2022) ........................................................10

*Strickler v. Greene*,
    527 U.S. 263 (1999)......................................................................11

*United States v. Arnt*,
    474 F.3d 1159 (9th Cir. 2007) .....................................................15

*United States v. Bundy*,
    968 F.3d 1019 (9th Cir. 2020) .....................................................14

*United States v. Cloud*,
    102 F.4th 968 (9th Cir. 2024) ......................................................14

*United States v. Hernandez,*
476 F.3d 791 (9th Cir. 2007) ...................................................15

*United States v. Iverson,*
162 F.3d 1015 (9th Cir. 1998) ........................15, 16, 17, 18

*United States v. Kohring,*
637 F.3d 895 (9th Cir. 2011) ...................................................10

*United States v. Ming Hong,*
242 F.3d 528 (4th Cir. 2001) ...................................................18

*United States v. Obagi,*
965 F.3d 993 (9th Cir. 2020) ...........................................6, 8, 11

*United States v. Sedaghaty,*
728 F.3d 885 (9th Cir. 2013) ...........................................9, 10

*United States v. Service Deli,*
151 F.3d 938 (9th Cir. 1998) .....................................................8

*United States v. Steinberg,*
99 F.3d 1486 (9th Cir. 1996) ...................................................10

*United States v. Tavera,*
719 F.3d 705 (6th Cir. 2013) ...................................................11

*Wearry v. Cain,*
577 U.S. 385 (2016).................................................6, 8, 11

**FEDERAL STATUTES**

8 U.S.C. § 1101(a)(15)(T)..........................................................5

33 U.S.C. § 1319(c)(1)...........................................................4, 17

33 U.S.C. § 1319(c)(2)...........................................................4, 17

33 U.S.C. § 1319(c)(6)...............................................................17

**FEDERAL REGULATIONS**

8 C.F.R. § 214.11(m)(2)(iii)........................................................5

## RULE 35(b)(1) STATEMENT

The panel here held that the test for *Brady* materiality was not satisfied even though suppressed evidence undermined the credibility of the government's star witness in a non-cumulative way and revealed that the witness had provided contradictory accounts of the central issue in the case: whether defendant Louie Sanft knew that the witness, Dennis Levia, had carried out discharges of pollutants. The panel also held that the district court was not required to instruct on a lesser included offense, even though a jury could rationally have convicted Sanft of the lesser offense and acquitted him of the greater one, on the theory that Sanft's liability was "derivative" of Leiva's.

Each of those issues warrants rehearing. On the *Brady* issue, the panel decision conflicts with decisions of this Court and other circuits and raises an issue of exceptional importance. The decision concludes that the fact that Leiva was impeached to some degree at trial undermines any finding of materiality—even though this Court and other circuits have held that additional, non-cumulative impeachment evidence can establish materiality, and here the suppressed evidence would have undercut Leiva's credibility in several significant new ways. The decision indicates that materiality does not exist where the evidence unaffected by suppression is sufficient to support a guilty verdict—even though this Court and the Supreme Court have held that sufficiency is not the correct test. And the decision

1

fails to consider the evidence in Sanft's favor—even though decisions of this Court and other circuits establish that such evidence is important in deciding whether suppression undermines confidence in the verdict. Given that the government's failure to uphold *Brady* was stark and that the resulting trial was unfair, it is exceptionally important to correct those flaws and ensure that the government is fulfilling its constitutional obligations.

The lesser-included-offense issue is also one of exceptional importance, as it involves a misinterpretation of an important federal statute and this Court's precedent and is in considerable tension with the approach taken outside this Circuit. Contrary to the language of the Clean Water Act ("CWA"), the panel concluded that a defendant who does not personally carry out discharges cannot be held liable as a principal and that under a "responsible corporate officer" theory of liability the defendant can *only* be charged with acting with the same state of mind as the employee who actually undertook the discharges. That approach forces juries to exactly the choice that the lesser-included-offense doctrine is meant to avoid: convicting the defendant of a crime more serious than the evidence supports or letting the defendant off scot-free. Juries will often choose to do the former rather than the latter, regardless of where the evidence leads. Rehearing is warranted.

## STATEMENT OF THE CASE

Defendant Louie Sanft owns and operates Seattle Barrel Company ("SBC"), which refurbishes industrial drums. 11-ER-2565-2573. In 2019, federal agents caught one of Sanft's employees, an undocumented non-citizen named Leiva, pouring caustic solution used to clean the drums into a sewer. 6-ER-1288; 8-ER-1794-1799, 1802. Based on Leiva's conduct, the government charged Sanft with knowing violation of the CWA, a knowingly false statement to federal agents that evaporation was used to dispose of caustic solution, and conspiracy. 3-ER-0570-0572.

The government's case hinged on Leiva's testimony that Sanft had directed his acts, as Leiva was the only person who carried out the discharges and provided the only direct evidence that Sanft had knowledge of them. 12-ER-3017-3018, 3035-3036. Sanft testified that he did not know about the discharges, had taken many steps to ensure lawful treatment of the caustic solution, and knew that officials were monitoring SBC's discharges at all relevant times. *E.g.*, 11-ER-2560-2561, 2692-2738. The jury had to decide whether to believe Leiva or Sanft.

The jury was told that in exchange for his testimony Leiva had obtained the right to remain in the country through the end of trial. But Leiva testified that he expected to be deported after trial and did not know about any possibility of any further immigration benefit based on his cooperation, and a government agent

3

testified that Leiva would be deported at trial's end. *E.g.*, 6-ER-1288, 1328-1329; 8-ER-1833.

In closing, the prosecution invoked Leiva's name sixty-six times and told the jury that if they disbelieved Leiva's testimony about what Sanft knew then they should entirely acquit Sanft. 12-ER-2912-2939, 3015-3041; 12-ER-3017-3018. The prosecution also stressed that Leiva's statements had been "remarkably consistent" over time and that Sanft's lawyers had all evidence the government possessed that might impeach Leiva. 12-ER-3027-3028.

Although the government charged knowing CWA violations, Sanft sought a jury instruction on negligent CWA violations on a lesser-included-offense theory. *See* 33 U.S.C. § 1319(c)(1)-(2); 10-ER-2532-2535. The district court refused, 1-ER-0050, 0074-0092, and the jury convicted on all counts, 2-ER-0400-0405.

Months later, the defense learned that the government had suppressed certain of Leiva's immigration records that the prosecutor possessed before trial. 2-ER-0235, 0258. Those documents contain information establishing that Leiva had a previously unknown motive to help the prosecution: before trial began, Leiva had applied to the government for a T-visa, which grants long-term relief from deportation, including possible permanent residency and a path to citizenship for the applicant and his family, if the applicant can show he was coerced into labor and complied with the government's reasonable requests for assistance with prosecuting

a crime related to the alleged coercion. 8 U.S.C. § 1101(a)(15)(T); 8 C.F.R. § 214.11(m)(2)(iii); 13-ER-3167, 3217. Leiva's T-visa application repeatedly asserts that his cooperation *in this case* qualified him for the visa, and shortly after trial—once EPA had told immigration authorities how "vital" and "critical" Leiva's testimony was to Sanft's conviction—the government granted the visa he sought. 13-ER-3210-3211, 3228-3237, 3242-3243, 3255.

The suppressed documents also directly contradict Leiva's trial testimony on central facts. Leiva said at trial that he carried out the discharges only because Sanft paid him extra for them, but in the suppressed documents Leiva said that Sanft forced him by threatening to turn him in to immigration authorities. 6-ER-1385-1387; 13-ER-3232-3233. In addition, at trial, Leiva said that the only benefit for his cooperation was relief from deportation until the end of the trial, whereas in the suppressed documents he asked for vastly more valuable immigration relief. *See* pp.3-4, *supra*.

The district court concluded that the suppression was not prejudicial enough to warrant vacatur under *Brady*, and a panel of this Court affirmed. The panel stated that Leiva had already been impeached to some degree at trial; that "Leiva's testimony was not the sole evidence linking Sanft to the discharge of caustic wastewater"; and that "the government's failure to disclose" did not undermine "confidence in the jury verdict." Op.2-3.

The panel also upheld the district court's refusal to instruct on the lesser-included offense of a negligent CWA violation. The panel stated that Sanft's liability necessarily "flow[ed] derivatively from Leiva's conduct" and that, because Leiva had acted knowingly, convicting Sanft of mere negligence would not have been permissible. Op.4-5.

## ARGUMENT

## I.    THE PANEL'S DECISION ON *BRADY* CONFLICTS WITH DECISIONS OF THIS COURT AND OTHER CIRCUITS AND INVOLVES AN EXCEPTIONALLY IMPORTANT ISSUE

The *Brady* issue in this case is exceptionally serious. The government conceded that the prosecution wrongly suppressed evidence favorable to Sanft; Sanft contends that the suppressed evidence would have destroyed the credibility of the government's star witness. The only issue on appeal is whether the suppressed evidence is "sufficient to undermine confidence in the verdict," *Wearry v. Cain*, 577 U.S. 385, 392 & n.6 (2016)—that is, whether "there is any reasonable likelihood" that suppressed evidence "could have affected the judgment of the jury," *United States v. Obagi*, 965 F.3d 993, 997 (9th Cir. 2020), by "alter[ing] at least one juror's assessment," *Cone v. Bell*, 556 U.S. 449, 452 (2009).[1]

---

[1] The *Brady* issue affects every count. The government conceded as much for Counts 1-34. As to Count 35, charging a knowing false statement to EPA, falsity and knowledge turned on Leiva's testimony. The government told the jury that Sanft knew his statement about disposal through evaporation was false because he knew about Leiva's discharges, 12-ER-3035-3036; 2-ER-0313—which means that

6

The panel's rejection of Sanft's *Brady* argument conflicts with decisions of this Court and other circuits in multiple ways. First, the decision concludes that the mere fact that Leiva's credibility was challenged at trial cuts powerfully against a finding of materiality. *See* Op.2-3 ("jury was already aware Leiva was a cooperating witness for the government and that he had received immigration benefits," "defense actively challenged Leiva's credibility," and "jury instruction specifically stat[ed] his testimony should be examined with greater caution"). But this Court, following binding Supreme Court decisions, has frequently held the opposite. "[W]ithheld impeachment evidence does not become immaterial merely because there is some other impeachment of the witness at trial"; rather, as common sense suggests, *Brady* prejudice exists where an already impugned witness would have been *further* impugned in a meaningful way had suppressed evidence been disclosed. *E.g.*, *Gonzalez v. Wong*, 667 F.3d 965, 984 (9th Cir. 2011); *see id.* ("government cannot satisfy its *Brady* obligation" by "making some evidence available and claiming the rest would be cumulative"); *United States v. Service Deli*, 151 F.3d 938, 944 (9th Cir. 1998); *Obagi*, 965 F.3d at 998; *see also Wearry*, 577 U.S. at 393 (prejudice as to witness "already impugned" by "many inconsistent stories"); *Banks v. Dretke*,

---

Leiva's testimony about Sanft's knowledge was critical. *Compare* 6-ER-1256-1258; 7-ER-1540-1541, *with* 7-ER-1540-1541; *see* 9-ER-2076, 2135-2136, 2212-2213; 10-ER-2474-2475; 12-ER-3017-3018.

540 U.S. 668, 702-03 (2004).  Other courts of appeals have held the same.  *See, e.g.*, *Dennis v. Pennsylvania Dep't of Corr.*, 834 F.3d 263, 300 (3d Cir. 2016) (en banc).

Here, the suppressed evidence would have made the jury much more likely to disbelieve Leiva.  The jury heard that Leiva had obtained a temporary reprieve from deportation until the end of trial.  *See* 6-ER-1288, 1329; 8-ER-1828-1845.  But the suppressed evidence showed that he was poised to obtain a far more valuable immigration benefit:  permanent U.S. residency for himself and his family.  That suppressed evidence made clear he understood that his trial testimony would affect whether the government viewed him as cooperative enough to obtain that benefit— giving him an exceptionally powerful motive to lie.  *See Gonzalez*, 667 F.3d at 983. The evidence also contradicted his trial testimony about his immigration status and about Sanft's alleged knowledge, thus providing an additional powerful basis for impeachment.  *Compare* 6-ER-1385-1387 (Leiva's trial testimony that Sanft paid Leiva extra for discharges and that Leiva would not "leave [his] house" for less money), *with* 13-ER-3232-3233 (suppressed statement that Sanft threatened and forced Leiva).

The panel decision cites (Op.3) *United States v. Sedaghaty*, 728 F.3d 885 (9th Cir. 2013), for the proposition that such additional impeachment is irrelevant to *Brady* materiality—but *Sedaghaty* says the opposite.  It explains that where "important additional grounds for impeachment have been suppressed," they "would

8

have added an entirely new dimension to the jury's assessment of [the witness]" such that materiality exists—especially where, as here, the government has described the witness as "critical to the prosecution's case."  728 F.3d at 902-03; *e.g.*, 13-ER-3105, 3242-3243.  Other decisions of this Court are similar, or present facts even more analogous to those here.  *E.g.*, *Gonzalez*, 667 F.3d at 984; *Quezada v. Scribner*, 611 F.3d 1165, 1167 (9th Cir. 2010) (suppressed evidence showing "lies under oath to conceal bias and prejudice" maximally undermines confidence in verdict).

Second, the panel decision is in tension with precedent of this Court and other courts holding that a *Brady* claim is not defeated because other evidence in the case, absent the testimony affected by suppressed evidence, could support a guilty verdict. The decision asserts that "Leiva's testimony was not the sole evidence linking Sanft to the discharge of caustic wastewater," Op.3, and characterizes Sanft as attempting to show that "Leiva's testimony was so critical" that "any doubt cast on that testimony would have left the jury with *no basis* to convict Sanft," Op.2 (emphasis added).  In making those statements, the panel evidently believed that suppressed *Brady* evidence can be deemed immaterial so long as other evidence would support a conviction.  Once again, however, the law of this Circuit is the opposite.  The *Brady* materiality test is "not a sufficiency of the evidence test."  *United States v. Steinberg*, 99 F.3d 1486, 1491 (9th Cir. 1996) (citation omitted).  A defendant raising a *Brady* claim therefore need not show that, "after discounting the inculpatory

9

evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995); *see Richards v. San Bernardino*, 39 F.4th 562, 572-73 (9th Cir. 2022). To the contrary, this Court has frequently found prejudice even where the evidence unaffected by the suppression is sufficient to support the conviction. *E.g.*, *Sedaghaty*, 728 F.3d at 900; *United States v. Kohring*, 637 F.3d 895, 902 (9th Cir. 2011).

Compounding that problem, the panel decision seriously overstates the force of the government's evidence. Op.3. The decision states that there was "technical and scientific evidence related to the unlawful discharge," *id.*—but the legally determinative question is whether Sanft *knew* of discharges, and the data shows only that discharges occurred at certain times and certain levels. The decision states that SBC had a "history of discharge violations," *id.*—but those violations were fairly minor and took place long before the events at issue here, *e.g.*, 4-ER-0882; 11-ER-2563; 12-ER-2880-2882. The decision states that the jury heard Sanft's statements to EPA and his testimony at trial, Op.3—but Sanft explained why he did *not* know of discharges, so the jury had to decide whether to believe Sanft's account or Leiva's, 12-ER-3017-3018, and using the suppressed evidence to impeach Leiva surely could have swayed them in Sanft's direction. And the decision states that there is "evidence that others had told Sanft of Leiva's misconduct," Op.3—but that evidence consisted only of two equivocal statements by SBC employees to Sanft

10

that did not actually describe discharges of caustic wastewater, took place far apart in time, in one instance involved an employee known to have a grudge against Leiva, and were denied by Leiva when Sanft investigated them. *See* 3-ER-0535-0537; 11-ER-2716-2721, 2737-2739; *see* 8-ER-1921, 1927, 1940; 11-ER-2718-2719, 2737. All of that adds up to very little indeed—and it is difficult to imagine the government would have prosecuted Sanft without Leiva's testimony.

Finally, the panel decision inexplicably fails to consider any of the evidence in Sanft's favor, even though such evidence is an important consideration in deciding whether the suppression provides a reason to lack confidence in the verdict. *See Wearry*, 577 U.S. at 392 & n.6; *Strickler v. Greene*, 527 U.S. 263, 280 (1999). Without addressing the force of that evidence and how it could have been bolstered by the suppressed evidence, it is not possible to properly assess whether "there is any reasonable likelihood" that the suppressed evidence "could have affected the judgment of the jury." *Obagi*, 965 F.3d at 997. Other circuits agree. *E.g.*, *United States v. Tavera*, 719 F.3d 705, 714 (6th Cir. 2013) (materiality analysis should consider "proof in [defendant's] favor").

The trial evidence overlooked by the panel decision is significant. That evidence shows that it would have been irrational for Sanft to knowingly order or allow discharges of wastewater into the sewers: Sanft testified that the county was always monitoring the sewers in SBC's immediate vicinity for chemicals, and a

11

former SBC employee testified that prior to the EPA raid Sanft frequently warned SBC staff about that monitoring and forbade them from any discharges. *E.g.*, 9-ER-2204-2205; 11-ER-2688-2691, 2720, 2738, 2765.  That evidence also shows that there was no plausible motive for Sanft to have ordered any discharges:  they were not more financially advantageous than other disposal methods, 11-ER-2334-2335, and Sanft had spent $400,000 to install a zero-discharge water system, *e.g.*, 11-ER-2692-2694; 4-ER-0837, 0892; 10-ER-2380-2385; 12-ER-3076.  In contrast, Leiva had a very strong motive to go behind Sanft's back:  Sanft paid Leiva for the multiple hours of work involved in cleaning SBC's tank properly, but the discharges allowed Leiva to avoid that work while still pocketing the money.  *E.g.*, 4-ER-0667-0668, 0679; 6-ER-1295; 11-ER-2603-2604.  A jury with that evidence before it could well have reached a different result if it knew of the suppressed evidence showing that Leiva had powerful reasons to lie and had told different stories about the discharges in different contexts—always in a way most advantageous to himself.

Those three flaws in the panel decision are each enough to warrant rehearing—but rehearing is also warranted because this case presents an issue of exceptional importance.  The government's failure to uphold its duty under *Brady* was stark and affected the fairness of this trial.  *See, e.g.*, *McNabb v. United States*, 318 U.S. 332, 347 (1943).  The suppressed evidence goes right to the heart of the prosecution's case, undermining the witness that the government itself repeatedly

described as central and without whom the government's evidence was thin and circumstantial at best. The government did not turn over that evidence before trial even though the government knew it was going to receive relevant materials from immigration authorities and those materials were actually present in the prosecutor's office *for years* in a clearly marked envelope. 2-ER-0234-0235, 0258. And when the suppression was revealed after trial, the government did not disclose the most important suppressed evidence until the court ordered its production, and the government drafted (for a third-party signatory) and submitted to the court an affidavit that misportrayed that evidence, which the government had not yet reviewed. *E.g.*, 2-ER-0263-0265, 0282; 13-ER-3314-3317.

As another panel of this Court recently recognized, underenforcement of *Brady* obligations "chips away at the foundational premises of the rule of law" and undermines "[p]ublic trust in our judicial system." *United States v. Cloud*, 102 F.4th 968, 981 (9th Cir. 2024). If there is no consequence for withholding evidence because a conviction is likely to nevertheless stand under an unduly lax materiality analysis, then the temptation to conceal impeaching or exculpatory material becomes very strong. *See United States v. Bundy*, 968 F.3d 1019, 1044 (9th Cir. 2020). That threatens to render "courts themselves" the "instruments of law enforcement" practices that violate the Constitution. *McNabb*, 318 U.S. at 347; *cf. Banks*, 540 U.S. at 696 ("unwarranted concealment should attract no judicial approbation").

13

Rehearing would allow this Court to scrutinize the conduct at issue, exercise supervisory powers to ensure that the government is upholding its constitutional obligations, and, if needed, remand for further factfinding about the suppression.

## II. THE PANEL'S DECISION SERIOUSLY MISINTERPRETS AN IMPORTANT FEDERAL STATUTE AND A DECISION OF THIS COURT ADDRESSING THAT STATUTE

The panel's decision regarding the district court's failure to instruct the jury on the lesser-included offense of negligent violation of the CWA also presents an exceptionally important question that warrants en banc rehearing. The panel's rejection of Sanft's argument that the jury should have been instructed about a negligent violation, and not just about a knowing violation, flies in the face of the CWA's text; misinterprets this Court's discussion of CWA "responsible … officer" liability in *United States v. Iverson*, 162 F.3d 1015 (9th Cir. 1998); and effectively renders the lesser-included-offense doctrine inapplicable whenever the defendant in a CWA case is charged with responsibility for an employee's knowing discharges.[2]

Here, the verdict form did not identify the theory on which the jury found knowing CWA liability, but that theory could have been principal liability or responsible-corporate-officer liability—and in either case, an instruction on a

---

[2] This issue also affects every count. If the jury had been instructed on and found Sanft guilty of negligently violating the CWA, it surely would not have convicted him of counts requiring proof of his knowledge—and that describes every count. *See Crace v. Herzog*, 798 F.3d 840, 848 (9th Cir. 2015).

negligent CWA violation is legally permissible and adequately supported by the evidence. *See United States v. Arnt*, 474 F.3d 1159, 1164-65 (9th Cir. 2007) (for lesser-included-offense analysis, "some evidence to support" lesser offense is enough and "contrary evidence" is "[s]et[] aside"). The district court's failure to give such an instruction therefore could have pushed the jury to convict Sanft of a knowing crime that the government had not adequately proved, because the only alternative was to acquit him entirely. *See United States v. Hernandez*, 476 F.3d 791, 802 (9th Cir. 2007). Such a push to conviction, which amounts to encouragement to disregard the reasonable-doubt standard, is the very result that the lesser-included-offense doctrine is meant to avoid.

The panel's mistaken understanding of the CWA is likely to yield that undesirable result in many future cases. First, the decision asserts that "because the government did not present evidence that Sanft personally carried out or caused the discharges, Sanft's liability rested either on aiding and abetting Leiva's actions or on a responsible corporate officer theory of liability"—i.e., on what the panel termed a "derivative[]" theory of liability under which whether Sanft himself was negligent was irrelevant. Op.4-5. But it is simply incorrect that the jury could not have deemed Sanft liable as a principal here given that Leiva physically undertook the discharges, or that the government did not assert that Sanft caused the discharges. Causing a discharge for CWA purposes does not, as the panel seems to have

15

assumed, require physical conduct by the defendant that actually sets the discharge in motion; acts by the defendant that proximately cause the discharge are enough for principal liability.  *See Iverson*, 162 F.3d at 1022, 1025-26; *compare* 1-ER-0083 (instructing jury that Sanft was guilty as a principal under the CWA if he knowingly "discharged, or caused to be discharged, a pollutant"), *with* 1-ER-0086-0087 (separately instructing jury on aiding-and-abetting or responsible-corporate-officer liability).

Second, citing *Iverson*, the panel stated that an instruction on negligent CWA liability would have been inappropriate "[u]nder a responsible corporate officer theory" because a "responsible corporate officer" can "be guilty of a negligent CWA violation" only where he "fails to prevent an illegal discharge that occurred due to employee negligence," whereas here Leiva carried out the discharges knowingly. Op.4-5.  That is irreconcilable with the CWA's text, unsupported by *Iverson*, and in considerable tension with precedent from outside this Circuit.  The CWA states that a "person" can violate the CWA either "negligently," by failing to take reasonable care, or "knowingly," 33 U.S.C. § 1319(c)(1)(B), (c)(2)(B), and then defines a "person" to include a "responsible corporate officer," 33 U.S.C. § 1319(c)(6). Accordingly, if a corporate employee undertakes discharges knowingly and the corporate officer is negligently supervising that employee's activities but has no knowledge of the discharges, then the officer is liable for only a negligent violation.

16

To be sure, as a matter of "responsible corporate officer" liability a corporate officer does not himself have to have taken a specific *act* that discharged a pollutant or caused it to be discharged. *See Iverson*, 162 F.3d at 1022, 1025-26. But it is the officer's own level of knowledge—his own *mental state*—that determines whether his CWA violation is knowing or negligent, not what is in the mind of the corporate employee. That is exactly why courts in other circuits have affirmed convictions of responsible corporate officers for negligent CWA violations even though the corporate employee for whom the officer was responsible carried out a discharge knowingly. *See United States v. Ming Hong*, 242 F.3d 528 (4th Cir. 2001) (officer's negligent CWA violation); *United States v. Ming Hong*, No. 99-cr-269, Dkt.56-p.4 (E.D. Va. 2000) (corporate employees' intentional discharges).

*Iverson* does not reach a different conclusion—and in relying on *Iverson*, the panel decision misinterprets it. *See* Op.5 (describing *Iverson* as holding that the government "must prove that the officer 'knew that the discharges were pollutants'"). There, the responsible officer was charged only with a knowing CWA violation, there was significant evidence of his knowledge (including his statements that if employees "got caught" discharging pollutants only a "slap on the wrist" would result), and there was no lesser-included-offense issue present in the case. *See* 162 F.3d at 1019, 1022, 1026. The fact that *Iverson* said that the officer *in that case* could not be convicted without knowledge thus simply reflected the nature of the

17

charge against him, not a requirement that *always* applies to officers when corporate employees themselves act knowingly.

In short, the panel has established as the law of this Circuit the extraordinary proposition that a jury cannot convict a corporate officer of a negligent CWA violation if the relevant corporate employee acted knowingly. But of course a jury that hears that the employee knowingly committed a bad act will feel moved to hold the corporate officer guilty of *something*—and now the only possible something will be a knowing violation, even if the evidence actually shows that the corporate officer was merely careless or failed to supervise in a reasonable way. That would, as a practical matter, entail a substantial expansion of criminal liability under an important federal statute, even though the statutory text points in exactly the opposite direction and no other circuit has reached a similar conclusion. Such a result is more than sufficient reason for this Court to grant rehearing.

## CONCLUSION

The Court should grant en banc or panel rehearing.

18

Respectfully submitted,

DATED:  October 2, 2024    By:    */s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Kathleen Foley
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW,
 Suite 500E
Washington, DC 20001-5369
(202) 220-1100
Donald.Verrilli@mto.com

Angelo J. Calfo
Henry C. Phillips
MORGAN LEWIS & BOCKIUS LLP
1201 Second Ave, Suite 2800
Seattle, Washington 98101
(206) 274-6400
angelo.calfo@morganlewis.com

*Counsel for Appellant*

19

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 23-2266

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: | 4,189 |.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | /s/ Donald B. Verrilli, Jr.     **Date** | Oct 2, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                                        *Rev. 12/01/2021*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Case Management System (ACMS).


DATED:  October 2, 2024          By: */s/ Donald B. Verrilli, Jr.*
                                      Donald B. Verrilli, Jr.